UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
FREDERICK PHILLIP,
and UPTON WILLIAMS,

                 Plaintiffs,

       -against-

THE CITY OF NEW YORK, HECTOR
RODRIGUEZ, and CHARLES MARTELLO,

                Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

**COMPLAINT**

**PLAINTIFFS DEMAND
A TRIAL BY JURY**

Plaintiffs Frederick Phillip and Upton Williams, by their attorneys, Lumer &

Neville, as and for their Complaint, hereby allege as follows, upon information and belief:

## PARTIES, VENUE and JURISDICTION

1.     At all times hereinafter mentioned, plaintiffs were each adult male

residents of Kings County, in the State of New York.

2.     At all times hereinafter mentioned, plaintiff Nigel Phillip was an adult

male resident of Kings County, in the State of New York.

3.     At all relevant times hereinafter mentioned, defendant City of New

York ("New York City"), was and is a municipal corporation duly organized and existing

under and by virtue of the laws of the State of New York and acts by and through its

agencies, employees and agents, including, but not limited to, the New York City Police

Department ("NYPD"), and their employees.

4.     At all relevant times hereinafter mentioned, defendant Hector

Rodriguez, Shield 5980, was employed by New York City as a member of the NYPD, and was assigned to the NYPD's Narcotis Bureau Brooklyn South ("NBBS") unit. Rodriguez is sued in his official and individual capacities.

5.     At all relevant times hereinafter mentioned, defendant Charles Martello, Shield 6303, was employed by New York City as a member of the NYPD, and was assigned to the NYPD's Narcotis Bureau Brooklyn South ("NBBS") unit. Martello is sued in his official and individual capacities.

6.     This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331, 1343 and 1367, and 42 U.S.C. § 1983.

7.     Venue is properly laid, pursuant to 28 U.S.C. Section 1391, et seq. in the Eastern District of New York, where the plaintiffs and defendant City of New York reside, and where the majority of the actions complained of herein occurred.

## RELEVANT FACTS

8.     As of April 20, 2012, plaintiff Upton Williams resided at 1100 East 53 Street in Brooklyn, New York.

9.     1100 East 53 Street was a two-family home with an upstairs and downstairs apartment.

10.     As of April 20, 2012, Upton Williams rented a room in the downstairs unit (the "Premises").

11.     As of April 20, 2012, two other individuals each rented separate

2

bedrooms in those Premises.

12.    On April 20, 2012, at or about 12:30 p.m., plaintiff Phillip drove to the Premises with the intention of briefly visiting a friend.

13.    Phillip was standing just inside the front door to the Premises, and had been present no more than a few minutes, when several members of the NYPD, including defendants, arrived.

14.    These officers stormed the Premises, immediately seized the plaintiffs and the other two residents of the Premises, and handcuffed them and took them into custody.

15.    The defendants were assigned to Narcotics Bureau Brooklyn South at the time of their entry  into the Premises.

16.    The defendants did not display have a warrant permitting their entry into the Premises and it is unknown whether they actually possessed such a warrant.

17.    The defendants did not seek or receive consent to enter the Premises, nor would it have been reasonable for them to believe that such consent existed.

18.    There were no exigent circumstances that would permit defendants to lawfully enter the Premises, nor would it have been reasonable for them to believe that such exigency existed.

19.    Plaintiffs were not engaged in any unlawful or suspicious activity at the time of defendants' arrival.

20.    Despite the absence of any evidence of wrongdoing on the part of

plaintiffs, the defendants formally arrested plaintiffs.

21.     The plaintiffs were both searched at the scene of their arrest and again at the station house.  Neither search yielded any evidence of guns, drugs, or contraband.

22.     The decision to arrest plaintiffs was objectively unreasonable under the circumstances.

23.     While plaintiffs were unlawfully  imprisoned by the defendants, the defendants completed arrest paperwork which, upon information and belief, alleged that each of the plaintiffs had unlawfully possessed marijuana.

24.     More specifically, Rodriguez completed paperwork with respect to plaintiff Phillip alleging that Rodriguez recovered marijuana that was in plain sight on a table next to where plaintiff was standing.

25.     This statement was materially false as no marijuana was present on any such table, nor was any marijuana present at or recovered from any location in the Premises that could be attributed to plaintiff or which defendants could reasonably believe plaintiff actually or constructively possessed. The statement that there was marijuana on a table near plaintiff was simply a lie.

26.     Rodriguez completed paperwork with respect to plaintiff Williams in which he claimed that he and defendant Martello observed Williams in possession of a safe in the Premises and that marijuana was recovered from the safe.

27.     This statement was materially false as defendants did not observe Williams in possession of the aforesaid safe, and no marijuana was recovered from said safe.

4

28.     The defendants forwarded these false allegations to the Kings County District Attorney ("KCDA") or the New York City Criminal Court ("NYCCC") in order to justify the arrest and to persuade the KCDA or NYCCC to commence and/or continue the plaintiffs' criminal prosecution.

29.     The defendants knew and understood that the KCDA and the NYCCC were relying on the truthfulness of defendants' claims and statements in order to evaluate whether to commence a criminal prosecution against the plaintiffs.  Defendants were aware that the KCDA and the NYCCC assumed  that all of the factual statements, claims and allegations that defendants relayed to the KCDA and the NYCCC  were truthful in all material respects.

30.     Defendants further knew and understood that they were obligated to provide any and all exculpatory information to the KCDA and the NYCCC,  and that defendants were expected to turn over to or otherwise provide the KCDA with all material information concerning the arrest, regardless of whether it was inculpatory or exculpatory.

31.     The KCDA, relying entirely on defendants' false representations, initiated the prosecution against Phillip under docket 2012KN032968.

32.     The KCDA, relying entirely on defendants' false representations, initiated the prosecution against Williams under docket 2012KN032960.

33.     All of the above-mentioned material allegations were false, and the defendants knew them to be false at the time the defendants made the false allegations.

34.     Plaintiffs were transported to central booking, where they were held

until they appeared for arraignment before a Kings County Criminal Court Judge.

35.     Both plaintiffs were arraigned and prosecuted under the above dockets.

36.     On October 2, 2012, the criminal prosecution of Frederick Phillip was dismissed and the prosecution terminated in his favor.

37.     On October 26, 2012, the criminal prosecution of Upton Williams was dismissed and the prosecution terminated in his favor.

38.     At no time did defendants have probable cause to seize, detain or arrest either of the plaintiffs, nor was it reasonable for the defendants to believe that such cause existed.

39.     At no time did any of the defendants, or any other member of the NYPD, take any steps to intervene in, prevent, or otherwise limit the illegal, unlawful and unconstitutional conduct engaged in by their fellow officers against the two plaintiffs.

40.     The defendants' illegal, unlawful, and unconstitutional actions against the plaintiffs in this matter were carried out in accordance with an existing plan or policy created  or otherwise condoned by the municipal defendant designed to increase the number of arrests made without regard to probable cause.

41.     More precisely, under the above-mentioned plan or policy, New York City Police Officers within the Narcotics Division would routinely arrest all persons found in any location where they believed contraband was located, regardless of whether there was any factual basis for the charges.  The arresting officer(s) would then make false statements of fact as to seeing narcotics in plain view or otherwise in the possession of each of the

persons arrested.

42.     The purpose of this plan or policy was to generate large numbers of arrests to help the NYPD create a false impression of positive activity by their officers.

43.     In addition, the plaintiffs herein allege that members of the Narcotics Division of the New York City Police Department are evaluated, at least in part, on the basis of their "activity," which is measured by the number of arrests made, and other, similar criteria.  Thus, members of the Narcotics Division routinely make arrests and engage in other police conduct  without sufficient legal cause in order to raise their levels of "activity" and improve the perception of their job performance.

44.     The above-mentioned plan or policy has been kept in effect from, at least, 2006 through, at least, the date of plaintiffs' arrests, despite the municipal defendant's knowledge that the individuals arrested were not being charged or that there was insufficient evidence to justify the arrests, or that the arresting officers were seeking to bolster the arrests with false allegations, and that the prosecuting offices often had found insufficient cause to justify the imposition of charges or continued prosecution if charges were filed.

45.     That at all times relevant herein, the defendants were acting within the scope of their employment, and their acts were done in furtherance of the City of New York's interests and without legal justification or excuse.

## FIRST CAUSE OF ACTION

46.     Plaintiffs repeat the foregoing allegations as though stated fully herein.

47.     The individual defendants willfully and intentionally seized, searched, detained, and arrested plaintiffs without probable cause, and without a reasonable basis to believe such cause existed, and caused them to be maliciously prosecuted, and denied due process and a fair trial through their fabrication of evidence.

48.     By so doing, the individual defendants, individually and collectively, subjected the plaintiffs to false arrest and imprisonment, unlawful searches of person and property, malicious prosecution, and denial of due process through the fabrication of evidence, and thereby violated, conspired to violate, and aided and abetted in the violation of plaintiffs' rights under the Fourth, Sixth,and Fourteenth Amendments of the United States Constitution.

49.     By reason thereof, the individual defendants have violated  42 U.S.C. §1983 and caused plaintiffs to suffer emotional and physical injuries, mental anguish, incarceration and the deprivation of liberty, and the loss of their constitutional rights.

## SECOND CAUSE OF ACTION

50.     Plaintiffs repeat the foregoing allegations as though stated fully herein.

51.     The defendants' actions in this matter were carried out in accordance with an existing plan or policy created or otherwise condoned by the municipal defendant designed to increase the number of arrests made without regard to probable cause.

52.     More precisely, under this policy or plan, officers within the Narcotics

Bureau, including the individual defendants, would, with or without lawfully issued warrants, search social clubs, apartments, and other locations, and, if any contraband was found, routinely arrest all persons found therein, regardless of whether there was any factual basis for the charges.  The arresting officer(s) would then make false statements of fact as to seeing narcotics in plain view or otherwise in the possession of each of the persons arrested.

53.     The purpose of this policy or plan was to generate large numbers of arrests to help the NYPD create a false impression of positive activity by their officers.

54.     In addition, members of the Narcotics Bureau are evaluated, at least in part, on the basis of their "activity" which is measured by the number of arrests made, search warrants secured, and other, similar criteria.  Thus, members of the Narcotics Bureau routinely make arrests and engage in other police activity without sufficient legal cause in order to raise their levels of "activity" and improve the perception of their job performance.

55.     The policy or plan was kept in effect from, at least, 2006 through, at least, the date of plaintiffs' arrest, despite the municipal defendant's knowledge that the individuals arrested were not being charged or that there was insufficient evidence to justify the arrests or that the arresting officers were seeking to bolster the arrests with false allegations, and that the prosecuting offices often had found insufficient cause to justify the imposition of charges or continued prosecution if charges were filed.

56.     In October 2011, following a bench trial in  New York State Supreme Court, Kings County, under indictment number 06314-2008, former NYPD narcotics officer Jason Arbeeny was convicted of planting drugs on two individuals and falsifying arrest reports.  Before issuing a verdict of guilty, the trial judge scolded the NYPD for what he

9

described as a "widespread culture of corruption endemic in its drug units." The judge further stated that the testimony demonstrated that the NYPD narcotics divisions maintain a "cowboy culture" and that he was "shocked, not only by the seeming pervasive scope of misconduct but even more distressingly by the seeming casualness by which such conduct is employed."

57.     That at all times relevant herein, the defendants were acting within the scope of their employment, and their acts were done in furtherance of the City of New York's interests and without legal justification or excuse.

58.     Defendant City of New York created, approved or condoned the practice and policy, as carried out by the Narcotics Bureau, of making wholesale arrests without probable cause in order to create false or misleading arrest numbers.

59.     By reason thereof, defendant has violated 42 U.S.C. §1983 and caused plaintiffs to suffer emotional and physical injuries, mental anguish, incarceration and the deprivation of liberty, and the loss of their constitutional rights.

## DEMAND FOR A JURY TRIAL

Pursuant to Fed. R. Civ. P. 38, plaintiffs hereby demand a jury trial of all issues capable of being determined by a jury.

WHEREFORE, the plaintiffs demand judgment against defendants jointly and severally as follows:

i.     on the first cause of action, actual and punitive damages in an amount to be determined at trial;

ii.    on the second cause of action, actual damages in an amount to be determined at trial;

iii.   statutory attorney's fees pursuant to, *inter alia*, 42 U.S.C. §1988 and New York common law, disbursements, and costs of this action; and

iv.   such other relief as the Court deems just and proper.

Dated: New York, New York
       March 23, 2015

                    LUMER & NEVILLE
                    Attorneys for Plaintiffs
                    225 Broadway, Suite 2700
                    New York, New York 10007
                    (212) 566-5060

                    Michael Lumer (ML - 1947)